UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN ATTILIO DOMINIQ ZIZI, <br> Plaintiff, <br> v. <br> KENNETH T. CUCCINELLI, et al., <br> Defendants. | Case No. 20-cv-07856-SVK <br><br> **REDACTED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 17, 23 |

Plaintiff Dr. Martin Atillio Dominiq Zizi ("Plaintiff" or "Zizi") is a citizen of Belgium. This action arises out of the denial of Plaintiff's application for an EB-1A visa, which is available to aliens of "extraordinary ability." All parties have consented to the jurisdiction of a magistrate judge. Dkt. 8, 15. Now before the Court are Plaintiff's motion for summary judgment and the cross-motion for summary judgment filed by Defendant United States Citizenship and Immigration Services ("USCIS") and the other government Defendants (collectively, the Defendants are referred to as the "Government"). Dkt. 17 ("Plaintiff's MSJ"), 23 ("Government MSJ").[1] The Court held a hearing on June 1, 2021. For the reasons that follow, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Government's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff, a citizen of Belgium, is a biophysicist who holds an M.D. and a Ph.D. Dkt. 1 (Complaint) ¶ 3; Dkt. 24-28 (Certified Administrative Record ("CAR")) at CAR0254. He is the founder and Chief Executive Officer of Aerendir Mobile, Inc., a company he started in 2015 based on his patented biophysics technology. CAR0119. Plaintiff was previously employed by Scanadu Inc., where his patented inventions formed the basis of the company's FDA-approved medical

---

[1] Defendants filed Dkt. 23 as a correction of their original cross-motion for summary judgment (Dkt. 22). The Court treats Dkt. 23 as Defendants' operative cross-motion for summary judgment.

1  device. CAR0193. Plaintiff has also engaged in research and other activities for the Belgian Ministry of Defense. CAR0202.

In 2016, Plaintiff was granted an O-1 visa. *See* CAR0101. On December 3, 2018, Plaintiff filed a petition for an EB-1A visa. CAR0088. USCIS issued a Request for Evidence on April 8, 2019, and Plaintiff responded on July 15, 2019. CAR 0089; CAR0265. USCIS denied Plaintiff's petition on September 11, 2019. CAR0088.

Plaintiff appealed the denial to the USCIS Administrative Appeals Office ("AAO") on October 11, 2019, and provided additional evidence of his qualifications. CAR0019-0057. The AAO dismissed the appeal on July 21, 2020. CAR0002.

Following dismissal of his administrative appeal, Plaintiff filed this lawsuit. Dkt. 1.

## II. LEGAL STANDARD

Pursuant to 8 U.S.C. § 1153(b)(1)(A), an alien may apply for a visa on the basis of "extraordinary ability" if the alien "seeks to enter the United States to continue work in the area of extraordinary ability" and "the alien's entry into the United States will substantially benefit prospectively the United States." To obtain such a visa, which is referred to as a "EB-1A visa," an alien must show that he has "extraordinary ability in the sciences, arts, education, business or athletics." *Id.; see also* 8 C.F.R. § 204.5(h)(1). "Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). A petition for an alien of extraordinary ability "must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). An alien may meet this evidentiary burden in one of two ways: (1) by evidence of "a one-time achievement (that is, a major, international recognized award)"; or (2) evidence of at least three of 10 achievements listed in section 204.5(h)(3). *Id.* Those ten categories are:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in

2

their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

"If the above standards to not readily apply to the [petitioner's] occupation, the petitioner may submit comparable evidence to establish [his] eligibility." 8 C.F.R. § 204.5(h)(4).

USCIS must engage in a two-step process in evaluating an application for a visa for an alien of extraordinary ability. The agency must first determine whether the alien has met his initial evidentiary burden of proving that he has received a major international award or has otherwise met three or more of the criteria set forth in section 204.5(h)(3). USCIS must then decide, in a "final merits determination" and weighing the documentation offered, whether the evidence demonstrates extraordinary ability. *See Kazarian v. United States Customs and Immigration Servs.*, 596 F.3d 1116, 1119-20, 1121 (9th Cir. 2010).

A district court may set aside USCIS's final action on an application for an alien of extraordinary ability only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kazarian*, 596 F.3d at 1118 (citations omitted); *see also* 5 U.S.C. § 706(2).

3

If agency error is found, the Court may evaluate whether the error was harmless. *Kazarian*, 596 F.3d at 1118-19. The concept of harmless error is constrained in the context of agency review and may be employed "only when a mistake of the administrative body *clearly* had *no bearing* on the procedure used or the substance of decision reached." *Id.* at 1119 (emphasis in original) (quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff concedes that he has not won an international award of the type contemplated by 8 C.F.R. § 204.5(h)(3). Plaintiff therefore bears the burden establishing by a preponderance of the evidence that he meets three of the 10 criteria of that section. *Guida v. Miller*, No. 20-cv-01471-LB, 2021 WL 568850, at *8 (N.D. Cal. Feb. 16, 2021).

In its initial determination, USCIS concluded that Plaintiff had not established that he had met at least three of the 10 criteria. CAR0062. USCIS specifically analyzed the following criteria: (1) receipt of lesser nationally or internationally recognized prizes or awards; (2) published material about the alien; (3) original scientific or other contributions of major significance in the field; (4) authorship of scholarly articles; (5) leading or critical role; and (6) high salary or other significantly high renumeration. CAR0060-0062. USCIS stated that because Plaintiff had not met "the antecedent evidentiary prongs," it would not conduct "a final merits determination to decide whether the beneficiary has reached a level of expertise indicating that the beneficiary is one of that small percentage who have risen to the very top of the field of endeavor and whether the beneficiary has sustained acclaim." *Id*.

In Plaintiff's administrative appeal, the AAO similarly concluded that Plaintiff did not meet the initial evidentiary of three criteria required under 8 C.F.R. § 204.5(h)(3). CAR0011. Specifically, the AAO found that Plaintiff did not satisfy the criteria related to lesser awards, published material about Plaintiff, and original contributions. *Id.* The AAO noted that on appeal Plaintiff claimed eligibility for two additional criteria—relating to authorship of scholarly articles and playing a leading or critical role in an organization—but stated that because Plaintiff "cannot fulfill the initial evidentiary requirement of three criteria under 8 C.F.R. § 204.5(h)(3), we reserve these issues." *Id.* The AAO concluded that it did not need to provide a final merits determination,

but nevertheless advised that "we have reviewed the record in the aggregate, concluding that it does not support a finding that the Petitioner has established the acclaim and recognition required for the classification sought." *Id.*

In this litigation, Plaintiff contends that the AAO's decision was arbitrary, capricious, and an abuse of discretion. Dkt. 1; Dkt. 17. Plaintiff now contends that he presented evidence on six of the criteria in section 204.5(h)(3), as well as comparable evidence under section 204.5(h)(4). Dkt. 17 at 7. The Court addresses each category upon which Plaintiff relies.

### A. Original scientific contributions of major significance in the field (8 C.F.R. § 204.5(h)(3)(v))

To demonstrate that he has made original scientific contributions of major significance in the field, Plaintiff relies on evidence regarding (1) the issuance of at least 13 patents naming Plaintiff as an inventor and in use in relevant fields, (2) his research in the area of phage therapy; (3) his research into peptide-based drug therapy; and (4) his other research and development activities, including the development of a way to build clinical studies and his research into depleted uranium in Kosovo. Dkt. 17 at 7-8; CAR0143-0147.

The AAO opinion discussed each category of evidence cited by Plaintiff but concluded that "considered both individually and collectively, [Plaintiff] has not shown that he has made original contributions of major significance in the field." CAR0010. Among other arguments, Plaintiff challenges the AAO's conclusions that Plaintiff had shown only possible future significance of the patented technology, not that the technology had already been of major significance. Dkt. 17 at 14-15. Plaintiff notes that he did not simply provide evidence of issued patents; he provided documentation intended to corroborate the significance of his patented inventions, including evidence of the FDA's approval of the Scanadu device based on Plaintiff's patents and articles from major publications discussing the impacts of the FDA-approved device. *Id.* at 15. Plaintiff also cites evidence that Aerendir entered into a Master Service Agreement with ▇▇▇▇ and was in negotiations with the federal government to use Aerendir technology based on other of his patents. *Id.*

Upon review, the Court concludes that the AAO's findings on Plaintiff's evidence of

original scientific contributions of major significance in the field to be arbitrary and capricious and an abuse of discretion. *See Kazarian*, 596 F.3d at 1118. As a preliminary matter, in discussing Plaintiff's patents, the AAO stated that "a patent generally recognizes the originality of an invention or idea but does not necessarily establish a contribution of major significance in the field." AR0007. This statement overlooks the fact that an invention must be not only novel, but also useful, in order to be eligible for patent protection. *See* 35 U.S.C. § 101. Although the AAO is undoubtedly correct that not all patents represent a contribution of major significance, the AAO's incomplete statement regarding the standard for patentability suggests it may have improperly discounted the significance of the patents.

In addition, the AAO's conclusion that Plaintiff had not provided satisfactory evidence that his patented technology had made contributions of major significance appears to have been based in large part on the AAO's selective parsing of letters and other evidence submitted by Plaintiff. *See* CAR0006-0008. The AAO devoted several paragraphs of its opinion to quoting Plaintiff's evidence, emphasizing in italics whenever the evidence spoke in terms of the future prospects for Plaintiff's patented technologies. *Id.* However, a conclusion that Plaintiff's inventions had only prospective potential, not existing significance, is contrary to the evidence. For example, the record contains evidence that Aerendir conducted two live "capability demonstrations" for ▮ as well as other demonstrations of the technology, in the summer of 2018. *See, e.g.,* CAR1410, CAR1416. Aerendir was engaged in advanced licensing negotiations with several entities as of July 2019. *See, e.g.,* CAR1406-1416. Although the AAO cited a statement by ▮▮ that Plaintiff's technology "*will* impact sectors across a wide spectrum" (CAR0006-0007 (emphasis in original)), Professor ▮ also provided examples demonstrating how Plaintiff's work had already "*influenced* the scientific community" (CAR0197-0198 (emphasis added)). Professor ▮ also explained with respect to Plaintiff's patented peptide drugs that Plaintiff had "obtained the first positive result in a relevant cancer animal model last year" and "[c]urrently he is in contact with major pharmaceutical companies like Novartis and GSK." CAR0198. Professor ▮ also cited Plaintiff's phage research, in which "[h]is efforts are finally paying off, because phagotherapy is *now* a recognized approach at research agencies both

6

in the E.U. and the U.S." CAR0199 (emphasis added). The record also included evidence that Plaintiff's work for Scanadu led to FDA approval and a product on the market. CAR0193-0195. The AAO's apparent conclusion that Plaintiff's inventions had only prospective significance is belied by other evidence in the record.

Even if the AAO was correct that the technology had only prospective potential, the Government cites no legal authority for its proposition that an applicant must "demonstrate how his work already qualified as a contribution of major significance" to satisfy his initial evidentiary burden under *Kazarian*. *See* Government MSJ at 17.

A related problem with the AAO's evaluation of the significant contributions criteria is that the AAO appears to have conflated the step 1 (evidentiary) and step 2 (merits) inquiries under *Kazarian*. Satisfying three of the 10 criteria under 8 C.F.R. § 204.5(h)(3) "is merely an evidentiary threshold for an alien seeking to prove extraordinary ability." *Rijal v. U.S. Citizenship & Immig. Servs.*, 772 F. Supp. 2d 1339, 1346 (W.D. Wash. 2011), *aff'd,* 683 F.3d 1030 (9th Cir. 2012). "If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a 'level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] filed of endeavor,' 8 C.F.R. § 204.5(h)(2), and 'that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise,' 8 C.F.R. § 204.5(h)(3)." *Id.* (citing *Kazarian*, 596 F.3d at 1119-20)). The Government (and the applicant) must not mistakenly "assume that satisfying three criteria is the end of the 'extraordinary ability' inquiry." *Rijal*, 772 F. Supp. 2d at 1346. "The USCIS may not conclude that the evidence does not satisfy and evidentiary criterion by looking beyond that criterion to the final merits determination." *Id.* at 1347. To be sure, Plaintiff's scientific contributions have to be "significant" to satisfy the evidentiary criterion, but the evidence he presented on that point is sufficient.

Considering the evidence as a whole, Plaintiff has shown, by a preponderance of the evidence, that he has made original scientific contributions of major significance to the field.

### B. Authorship of scholarly articles in the field in professional or major trade publications or other major media (8 C.F.R. § 204.5(h)(3)(vi))

Plaintiff presents evidence that he authored scholarly articles in the field in professional or major trade publications or other major media, as contemplated by 8 C.F.R. § 204.5(h)(3)(vi). Specifically, Plaintiff provided with his original Petition a listing from ResearchGate showing that he had authored 68 articles, had been cited over 2200 times, and had 4375 "reads" of his published work. CAR0212. Plaintiff's "h-index" was 24, and Research Gate assigned him a score that was 92.5% higher than other ResearchGate members. CAR0226. In response to the AAO's request for evidence, Plaintiff provided his Google Scholar listing, showing over 2880 citations and an "h-index" of 27. CAR1019. The AAO did not address the category of authorship of scholarly articles once it concluded that Plaintiff had failed to satisfy three other criteria. CAR0011. Similarly, in this action, the Government does not address this category.

The Court concludes that Plaintiff has shown, by a preponderance of the evidence, his authorship of scholarly articles in the field in professional or major trade publications or other major media. The Court notes that government does not argue otherwise.

### C. Performing a leading or critical role for organizations or establishments that have a distinguished reputation (8 C.F.R. § 204.5(h)(3)(viii))

Plaintiff argues that he played a leading or critical role for Aerendir Mobile, Scanadu, and the Belgian Ministry of Defense, and he presents evidence of the reputations of Aerendir and Scanadu. Plaintiff MSJ at 24-26; CAR0032-0032, 0052, 0148, 0190-0193, 0202, 0237, 1194-1204, 1405-1416, 1420-1421, 1426, 1436, 1448. Having concluded that Plaintiff could not establish his eligibility for three other criteria, the AAO declined to decide whether Plaintiff satisfied the leading or critical role criteria of 8 C.F.R. § 204.5(h)(3)(viii). CAR0011. The Court concludes that although Plaintiff has established that he played a leading role at Aerendir and Scanadu, he has not established that those companies have a distinguished reputation within the meaning of Section 204.5(h)(3)(viii). Moreover, Plaintiff has not established that his work in connection with the Belgian Ministry of Defense rose to the level of a leading or critical role within that organization, as required under this category.

### D. Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought (8 C.F.R. § 204.5(h)(3)(iii))

Plaintiff offers evidence of articles in the publications *Biometricupdate.com*, *Techworld*, and *FindBiometrics*, *Digital Journal*, as well as a podcast episode featuring an interview of Plaintiff and Plaintiff's Tedx talk regarding phage therapy, arguing that they satisfied the category for published material about him in professional or major trade publications or other major media, relating to his work in the relevant field under 8 C.F.R. § 204.5(h)(3)(iii). CAR0208, CAR0209, CAR126, CAR0283, CAR0041; *see also* CAR0310, CAR0319, CAR0327. The AAO concluded that this evidence did not satisfy the criteria, for several reasons. Plaintiff challenges two of the reasons the AAO rejected the publications evidence: (1) the AAO's conclusion that the cited articles were not about Plaintiff; and (2) the AAO's finding that Plaintiff had failed to provide independent evidence of the circulation of the cited publications. Plaintiff's MSJ at 21-22.

The AAO's rejection of the articles upon which Plaintiff relied on the grounds that the articles do not reflect published material about Plaintiff but were instead about technology he developed and/or companies with which he is associated was arbitrary and capricious. CAR0005. To the extent the articles focused more on the technology than on Plaintiff's biography, that does not detract from, and in fact enhances, their evidentiary value on the issue of Plaintiff's claim to "extraordinary ability" because the technology discussed in the articles was developed by Plaintiff himself. *See, e.g.*, CAR0208-0209; CAR0319-0328. Thus, the fact that the technology warrants more extensive discussion reflects Plaintiff's own abilities. The cases the Government cites on this point are distinguishable. *See* Government MSJ at 15. In *Strategati, LLC v. Sessions*, the applicant claimed extraordinary ability in the field of small business strategy. No. 18-cv-1200, 2019 WL 2330181, at *2 (S.D. Cal. May 31, 2019). USCIS rejected an article submitted as evidence on the criteria of published material about the applicant because the article was about "the rise of entrepreneurial women and not the petitioner specifically." *Id.* at *6. Similarly, in *Noroozi v. Napolitano*, USCIS rejected articles that were "about the Iranian Table Tennis Team and briefly mention" the applicant. 905 F. Supp. 2d at 545. By contrast to these cases, to the extent the articles submitted by Plaintiff do not concern him personally, they are about technology

9

he developed.

        The AAO also acted arbitrarily, capriciously, and contrary to law when it found that Plaintiff had failed to establish that any of the websites represent professional or major trade publications or other major media. CAR0006. The AAO faulted Plaintiff for failing to offer "independent evidence, such as website traffic figures from third parties, demonstrating the websites' standing as major media." *Id*. The Government argues that the AAO was correct because "[t]he requirement to demonstrate that a publication qualifies as major media is a long-standing one that has been acknowledged by several courts." Government MSJ at 16 (citation omitted). However, this argument ignores the fact that an applicant is not required to provide evidence of publications about him in "major media"; he may also satisfy the category for published material by providing evidence of published material about him in "professional or major trade publications." 8 C.F.R. § 204.5(h)(3)(iii). Evidence of the type demanded by the AAO–such as independent website traffic figures–would shed little light on whether a publication is a "professional or major trade publication" within the meaning of the regulation. After all, even if a professional journal is read by every member of that profession, the circulation would be small if the profession itself is small. In other words, "one would expect that professional and trade journals would have a smaller circulation than publications read by the general populace, and thus that professional and trade journals would not generally qualify as 'major media.'" *Braga v. Poulos,* No. CV 06-5105 SJO (FMOx), 2007 WL 9229758, at *6 (C.D. Cal. July 6, 2007), *aff'd,* 317 Fed. Appx. 680 (9th Cir. 2009). To be sure, neither a self-serving assertion of a publication's "#1" position in a field nor attorney argument is sufficient to show that a publication qualifies a professional or major trade publication. *Id.* at 7. However, independent evidence of a publication's stature as a major trade publication is not required when that stature is self-evident. *See Eguchi v. Kelly*, No. 3:16-CV-1286-D, 2017 WL 2902667, at *4 (N.D. Tex. July 7, 2017). Plaintiff provided sufficient evidence about these publications' circulation and readership. CAR0319-0328.

        Under the circumstances of this case, the Court concludes that Plaintiff has shown, by a preponderance of the evidence, that published material about him appeared in professional or

10

major trade publications.

### E. High salary or other significantly high renumeration for services in relation to others in the field (8 C.F.R. § 204.5(h)(3)(ix))

Plaintiff argues that he presented evidence of his high salary in relation to other Biophysicists and Biomedical Engineers sufficient to satisfy 8 C.F.R. § 204.5(h)(3)(ix). Plaintiff MSJ at 10-11. The Government acknowledges that Plaintiff presented such evidence in his Petition. Government MSJ at 7. In its Initial Determination, USCIS concluded that Plaintiff's salary evidence "has no probative value" and "do[es] not show what top CEOs earn in the field of biometric technology in the San Francisco area." CAR0068. However, the AAO did not address this category. According to the Government, Plaintiff waived the "high salary" category because he did not present that argument in his AAO appeal. Dkt. 31 at 11. Plaintiff does not directly address the waiver argument, but he does state that "[t]he AAO had the entire record before them on their de novo review" and that he "appealed the entire Denial." Plaintiff MSJ at 12.

In his appeal brief to the AAO, Plaintiff did not argue that he satisfied the high salary criteria of 8 C.F.R. § 204.5(g)(ix). *See* CAR0070-0086. He instead argued that he met the criteria for (1) original scientific contributions; (2) scholarly publications; (3) articles about Plaintiff; (4) critical roles in distinguished organizations; and (5) comparable evidence, including evidence of venture capital and angel investment to establish the lesser award criteria. *Id.*

Because Plaintiff did not appeal USCIS's Initial Determination that he did not satisfy the high salary criteria to the AAO, this Court will not consider that argument.

### F. Receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor (8 C.F.R. § 204.5(h)(3)(i))

Plaintiff claims that the award of venture capital funding to Aerendir, Inc. satisfies the criteria of receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor under 8 C.F.R. § 204.5(h)(3)(i). Plaintiff MSJ at 22-24. The AAO disagreed because the venture capital funding went to the company (Aerendir), not Plaintiff personally. CAR0003-0005. Both sides point to USCIS public guidance stating that venture capital funding may satisfy the lesser prizes or awards criteria. *See* Plaintiff's MSJ at 22-23 (citing USCIS website); Government MSJ at 13 (same).

11

The Court concludes that the AAO's analysis of the evidence of venture capital funding was arbitrary, capricious, and an abuse of discretion. The Government does not dispute that venture capital funding can satisfy the lesser prizes or awards criteria. *See* Government MSJ at 13. Neither the AAO (in the administrative appeal) nor the Government (in this action) cite legal support for their insistence that the venture capital funding must be awarded to the individual applicant to qualify. Instead, the argument appears to be based solely on the use of the word "you" in the statement regarding venture capital funding on the USCIS website. *See* CAR0004; Government MSJ at 13. Yet this interpretation would severely curtail, if not eliminate, the ability of applicants to rely on venture funding to satisfy the section (h)(3)(i) criteria. Venture funding is normally given to companies, not individuals. Thus it is to be expected that the venture capital investment in this case went to Plaintiff's company, Aerendir, rather than Plaintiff personally. In addition, Plaintiff does not rely on the mere fact of the investment; he has also presented evidence that his involvement in the company was the motivating factor for the investment made by ▆▆▆ ▆▆▆ *See* CAR0237-0238. On this criteria, the AAO erred by drawing an improper and unsustainable distinction between Plaintiff and Aerendir.

Considering the evidence as a whole, Zizi has shown, by a preponderance of the evidence, that he received a lesser nationally or internationally recognized prize or award for excellence in his field of endeavor, in the form of a ▆▆▆▆ venture capital investment in his company, Aerendir.

### G. Comparable evidence (8 C.F.R. § 204.5(h)(4))

Plaintiff argues that in addition to the evidence discussed above concerning certain categories under 8 C.F.R. § 204.5(h)(3), he presented "comparable evidence" under § 204.5(h)(4) that USCIS failed to evaluate. Plaintiff MSJ at 26. Specifically, Plaintiff refers to evidence that he is an invited writer for the Forbes Technology Council. *Id.* (citing CAR0243).

Section 204.5(h) provides that a petitioner may submit comparable evidence to establish his eligibility if the standards in section 204.5(g) "do not readily apply to the [petitioner's] occupation." The parties disagree about who bears the burden of proving that the section 204.5(g) standards do not apply to an applicant's occupation. Plaintiff argues that USCIS erred by not

12

1 considering his comparable evidence. Plaintiff MSJ at 26. The Government argues that "Plaintiff must explain why he cannot submit evidence that would satisfy at least three of the criteria set forth in Section 204.5(h)(3), as well as why the evidence he has included is comparable to that required under Section 204.5(h)(3))." Dkt. 23 at 14.

Under the plain language of 8 U.S.C. § 204.5(h), it is Plaintiff's burden to demonstrate that the standards in section 204.5(g) did not readily apply to his occupation before USCIS is required to consider comparable evidence. He has not done so. Indeed, as discussed above, the Plaintiff was able to present evidence on a number of the section 204.5(g) categories. Accordingly, the Court finds no error in USCIS's conclusions regarding of Plaintiff's comparable evidence.

## IV. CONCLUSION AND DISPOSITION

As discussed above, the Court concludes that Plaintiff satisfied step one of the *Kazarian* framework because he submitted sufficient evidence of at least three of the 10 criteria under 8 C.F.R. § 204.5(h). Specifically, Plaintiff provided sufficient evidence of the following criteria: (1) original scientific contributions of major significance; (2) authorship of scholarly articles; (3) published material about the alien; and (4) receipt of lesser awards in the field of endeavor.

Plaintiff argues that if the Court finds error in the AAO's decision, the Court should "set aside the denial, find that he is eligible for the classification, and order Defendants to approve the petition so that he may move on to the adjustment of status phase to seek his green card." Plaintiff MSJ at 28. Alternatively, the Plaintiff argues that if the Court determines that remand is appropriate, it should retain jurisdiction. *Id.* The Government argues that if the Court concludes that the agency erred, "the only proper remedy will be to remand the issue to the agency for consideration of the I-140 petition in a *Kazarian* step two final merits determination." Government MSJ at 21.

Because USCIS concluded that Zizi had failed to establish the lesser awards, published material about the alien, and original scientific contributions of major significance criteria under 8 C.F.R. § 204.5(g), it did not address the other criteria raised by Zizi and did not engage in a final merits determination. *See* CAR00011. In this situation, the proper course is to remand to the agency for further proceedings consistent with the Court's decision. *Rubin v. Miller*, 478 F. Supp.

13

3d 499, 508 (S.D.N.Y. 2020). On remand, USCIS must proceed to step two of *Kazarian* and conduct a final merits determination.

**SO ORDERED.**

Dated: June 24, 2021

SUSAN VAN KEULEN
United States Magistrate Judge